IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| QYNNISHA BRYANT )<br>)<br>On Behalf of Herself and all Others )<br>Similarly Situated, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>TOPPERS INTERNATIONAL, INC., a )<br>Domestic For-Profit Corporation, )<br>DARNELL LEWIS GARDNER, )<br>Individually, and<br>SANDRA GARDNER, Individually<br><br>   Defendants. | Case No.: _____<br><br>**Collective Action**<br>**COMPLAINT** |

COMES NOW, Qynnisha Bryant ("Named Plaintiff"), on behalf of herself and all others similarly situated, opt-in Plaintiffs (collectively "Plaintiffs"), by and through undersigned counsel, hereby sets forth this collective action against Defendants Toppers International, Inc., Darnell Lewis Gardner, and Sandra Gardner (together, "Defendants") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This action is brought individually and as a collective action seeking unpaid minimum wages, back-pay, restitution, liquidated damages, reasonable attorney's fees and costs, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Defendants had a systemic company-wide policy, pattern, or practice of misclassifying employees as "independent contractors."

2. Defendants' pay practices and policies were in direct violation of the FLSA. Accordingly, Plaintiffs seek unpaid straight and overtime compensation, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

3. As a result of this policy, pattern, or practice of misclassification, Defendants are legally responsible and now liable for failing to pay Plaintiffs under the Federal Fair Labor Standards Act ("FLSA").

4. Named Plaintiff brings this action as a collective action against Defendants seeking back-pay, restitution, liquidated damages, reasonable attorney's fees and costs, and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 29 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

6. The United States District Court for the Middle District of Georgia has personal jurisdiction because Defendants conducted business in Clarke County, Georgia, which is located within this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conducted business within the Middle District of Georgia, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

8. All the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

9. Named Plaintiff is an adult resident of Alabama, residing at 109 Williamson Street Oxford, Alabama 36203.

10. By acting as the named plaintiff in this action, Named Plaintiff hereby affirms her consent to participate as a plaintiff in an FLSA collective action.

11. Named Plaintiff was employed by Defendants as an exotic dancer at Defendants' Toppers International strip club located in Athens, Georgia.

12. The FLSA collective action Opt-In and Putative Plaintiffs consist of individuals who did work or have worked for Defendants at the Toppers International who were classified as independent contractors, and who were suffered or permitted to work by Defendants, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

13. Topers International, Inc., is a corporation formed in Georgia and operates as a strip club featuring female exotic dancers.

14. For the entire period relevant to this action, Toppers International, Inc. has operated as a strip club at the location 100 North Jackson Street, Athens, Georgia 30601.

15. Darnell Gardner is an adult resident of Georgia, residing at 1050 Old Waverly Way, Watkinsville, Georgia 30677.

16. Sandra Gardner is an adult resident of Georgia, residing at 1210 St. Andrews Drive, Watkinsville, Georgia 30677.

17. At all times relevant to this action, Darnell Gardner and Sandra Gardner are and were the primary owners and managing officers of Toppers International, Inc. In this capacity, Darnell Gardner and Sandra Gardner, individually and together, supervised, managed, and dictated the day-to-day operation of the Toppers International strip club, had authority to hire, fire, and administer employment related discipline on employees of the club, including the exotic dancers, had the authority to set and alter work schedules and work hours of employees of the club, including the exotic dancers, and in charge of keeping and maintaining all employment records for all employees of the club, including the exotic dancers.

## **COVERAGE**

18. At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiffs.

19. At all times material to this action, each of the Defendants were Plaintiffs' employers within the defined scope of the FLSA, 29 U.S.C. § 203(d).

20. At all times material to this action, Plaintiffs were individual employees of each of the Defendants within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

21. At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales

made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS

22. At all relevant times, Defendants operated a strip club in Athens, Georgia, featuring female exotic dancers.

23. At all relevant times, Plaintiffs were employed by Defendants as exotic dancers at Defendants' Toppers International strip club in Athens, Georgia.

24. During the period of Plaintiffs' employment, the number of shifts Plaintiffs worked varied from week to week.

25. During the period of Plaintiffs' employment, the exact number of hours Plaintiffs worked varied from week to week.

26. Named Plaintiff was employed by Defendants as an exotic dancer at Defendants' Toppers International strip club for the period of about May 2018 through about February 2020.

27. During the period of Named Plaintiff's employment, the exact number of hours Named Plaintiff worked varied from week to week.

28. During the period of Named Plaintiff's employment, Named Plaintiff customarily worked about 3-5 shifts per week for a total of about 21-35 hours per week.

29. During the period of Named Plaintiff's employment, on average, Named Plaintiff worked about 4 shifts per week and a total of about 28 hours per week.

30. Defendants have possession, custody, and control of time and/or sign in records and "house fee" payment records for Plaintiffs.

31. Agents on behalf of Defendants had actual knowledge of all hours

Plaintiffs worked each shift through sign in or tip-in sheets, DJ records, and shift-managers monitoring and supervising Plaintiffs' work duties.

32. At no time during Plaintiffs' period of employment did Defendants ever pay Plaintiffs any wages for hours that Plaintiffs worked each week.

33. Defendants totally failed to pay wages or any kind of compensation to Plaintiffs for work duties performed.

## **MISCLASSIFICATION AS INDEPENDENT CONTRACTORS**

34. Defendants misclassified Plaintiffs as independent contractors when Plaintiffs should have been classified under the FLSA as employees.

35. Defendants controlled all aspects of the job duties Plaintiffs performed inside the club through employment rules and workplace policies.

36. Defendants controlled the method by which Plaintiffs could earn money at the club by establishing dance orders, setting customer prices on private and semi-private exotic dances, and setting private and semi-private dance specials and promotions for customers.

37. Defendants required Plaintiffs to perform private and semi-private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants.

38. Defendants hired Plaintiffs and had the ability to discipline, fine, fire, and adjust Plaintiffs' work schedules.

39. Defendants, through supervisors and managers, supervised the duties of Plaintiffs to make sure Plaintiffs' job performance was of sufficient quality.

40. Defendants conducted initial interviews and vetting procedures for Plaintiffs, and, at Defendants' sole discretion, Defendants' management and/or ownership could deny Plaintiffs access or ability to dance and/or work at the club.

41. Defendants had the right to suspend or send Plaintiffs home and away from the club if Plaintiffs or any other violated rules or policies or if the club's ownership or management, at its discretion, did not want Plaintiffs to work at the club.

42. Plaintiffs were not required to have or possess any requisite certification, education, or specialized training as a condition of employment with Defendants.

43. In addition to failing to pay Plaintiffs wages for hours worked, Defendants required Plaintiffs to pay the club or its ownership or management a house fee or kickback that ranged from $20.00-$50.00 or more for each shift Plaintiffs worked.

44. Without justification, Defendants regularly and customarily kept and/or assigned to management tips and gratuities Plaintiffs received from customers.

45. At all times relevant to this action, Defendants and club ownership and management had actual knowledge that Plaintiffs at Defendants' Toppers International were employees and not independent contractors and were owed minimum wage compensation under the FLSA.

46. At all times relevant to this action, Defendants, including management and ownership, had actual knowledge the club misclassified Plaintiffs as independent contractors, failed to pay them wages as required under the FLSA, unlawfully withheld or assigned tips Plaintiffs received from customers, and unlawfully charged Plaintiffs kickbacks, fines, and surcharges during their employment period.

47. Defendants have willfully violated the statutory rights of Plaintiffs under the FLSA, resulting in damages to Plaintiffs in the form of unpaid straight-time wages in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

48. Named Plaintiff brings Count One of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

49. Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who have worked for Defendants at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b), who signed an agreement to provide exotic dancing services to Defendants, and performed such services, pursuant to that agreement, as independent contractors.

50. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs because joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number is dependent are in the sole possession of Defendants, upon information and belief, there are more than 30 members of the collective, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims.

51. Named Plaintiff will fairly and adequately protect the interests of the members of the collective and has retained counsel who is experienced and competent

in the fields of wage and hour law and collective action litigation.

52. Named Plaintiff and members of the collective are similarly situated with respect to the FLSA violations alleged; specifically, Defendants misclassified them as independent contractors and failed to pay them minimum wage.

53. Named Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

**CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 203(m), 206**
**(Unlawful Tip Deductions and Failure to Pay Minimum Wage)**
**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

54. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

55. Pursuant to the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked.

56. The FLSA, 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, provides an exception to the aforementioned minimum wage rate of $7.25 per hour, allowing certain employers to take a "tip credit," and count tips received by eligible employees toward the employer's minimum wage obligations, with a maximum credit claimed for each employee of $5.12 per hour.

57. In order to lawfully utilize the tip credit allowance, the FLSA, 29 U.S.C. § 203(m), requires in part that "all tips received by [each] employee [be] retained by the employee."

58. The FLSA prohibits a taking or assignment by Defendants or its management or non-customarily tipped employees of tips or gratuities received by tipped employees from customers.

59. As set forth above, Defendants failed to pay Named Plaintiff and other similarly situated individuals minimum wage compensation as required by the FLSA.

60. As set forth above, Defendants unlawfully kept and/or assigned tips and gratuities Plaintiffs and other similarly situated individuals received from customers.

61. Without the benefits of the tip credit provision, Defendants must pay Plaintiffs a free and clear hourly rate the statutory minimum wage of $7.25 per hour for all hours worked, without any credit for the tips received by Plaintiffs.

62. As set forth above, Defendants willfully failed to pay Plaintiffs the statutory minimum wage rate by misclassifying them as independent contractors.

63. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), which permits the recovery of unpaid minimum wages for up to three (3) years, rather than two (2) years.

64. Similarly, for the reasons stated above, Defendants cannot affirmatively defend their failure to pay the appropriate minimum wage rate as having been done in good faith, entitling Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b).

65. As such, Plaintiffs seek to recover from Defendants the following damages:

   a. Minimum wages due;

  b. Liquidated damages in an equal amount;

  c. Reasonable attorneys' fees and costs; and

  d. All other legal and equitable relief as the Court deems just and proper.

## **RELIEF SOUGHT**

WHEREFORE, Named Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as a representative of all those similarly situated under the FLSA collective action;

2. Award Named Plaintiff and all those similarly situated actual damages for all free and clear unpaid minimum wage compensation and misappropriated or assigned wages and/or gratuities found due to Named Plaintiff and those similarly situated, and liquidated damages equal in amount, pursuant to the FLSA, 29 U.S.C. § 216(b);

3. Award Named Plaintiff and all those similarly situated pre- and post-judgment interest at the statutory rate, pursuant to the FLSA, 29 U.S.C. § 216(b);

4. Award Named Plaintiff and all those similarly situated attorneys' fees, costs, and disbursements pursuant to the FLSA, 29 U.S.C. § 216(b); and

5. Award Named Plaintiff and all those similarly situated further legal equitable relief as this Court deems necessary, just and proper.

Respectfully submitted this, June 3, 2020.

        BUCKLEY BEAL, LLP

        */s/ Thomas J. Mew IV*
        Thomas J. Mew IV
        Georgia Bar No.: 503447
        600 Peachtree Street, NE
        Suite 3900
        Atlanta, Georgia 30308
        (404) 781-1100 (ph)
        Email:  TMew@BuckleyBeal.com

        */s/ Gregg C. Greenberg*
        Gregg C. Greenberg,
        Virginia Bar No. 79610
        (Pro Hac Vice application to be filed)
        ZIPIN, AMSTER & GREENBERG, LLC
        8757 Georgia Avenue, Suite 400
        Silver Spring, Maryland 20910
        (301) 587-9373 (ph)
        Email:  GGreenberg@ZAGFirm.com

        *Attorneys for Named Plaintiff*
        *and the Collective*